UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DARRELL SEYBOLD, | § | |
| *Plaintiff*, | § § § | |
| v. | § § | Civil Action No. 3:21-cv-228-X |
| CHARTER COMMUNICATIONS, INC., | § § § § | |
| *Defendant.* | § § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Charter Communications, Inc.'s (Charter) motion for judgment on the pleadings on Plaintiff Darrell Seybold's claims [Doc. No. 11] and Seybold's motion for oral argument on Charter's motion [Doc. No. 22]. After careful consideration, and for the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** Charter's motion for judgment on the pleadings and **DISMISSES AS MOOT** Seybold's motion for oral argument.

### I.   Factual Background

Seybold worked for Charter and its predecessor for 8 years, then Charter terminated his employment in February 2020. At termination, Seybold was a sales manager, earning a base salary, bonuses, and commissions. Seybold alleges that Charter's purported basis for termination was unprofessional conduct and communication but that the underlying basis for that conclusion was his reports of unlawful or unethical corporate behavior.

1

Seybold made four reports. The first was about a 2015 Charter corporate policy of retagging circuits to make old customers appear to be new. Seybold claims: "Charter altered its compensation plan documents to prevent it from proliferating even more. This change required the downward adjustment of payment completely down to the product segment."[1] Seybold claims he reported this policy as improper and now believes it was securities fraud, cooking the books, and shareholder fraud.

Seybold's second report was over a 2019 policy change on classifying senior homes from formerly being only commercial accounts with the owner/landlord to then also being counted as residential accounts with each tenant. Seybold claims he reported this policy as improper and now believes it was securities fraud, cooking the books, and shareholder fraud.

Seybold's third report was regarding a change to the sales funnel (the projected sales multiplied by a certain factor for targeting potential clients) for sales personnel. Charter allegedly changed the standard funnel of five times the projected sales over 5–6 months to a new system of five times the projected sales every month. Seybold claims the new standard was unattainable, so sales personnel had to exaggerate their funnels or get fired. Seybold asserts Charter used the exaggerated information to pass to shareholders and prospective buyers. Seybold alleges that he reported the problem, and after it was clear there would be no change, he "had no choice but to allow his sales team to use similar methodology or face termination of himself and all

---

[1] Doc. No. 1 at 8.

of his team members."² Seybold now believes the funnel change was securities fraud, cooking the books, and shareholder fraud.

Seybold's fourth report related to an error in how Charter calculated commissions that underpaid himself and his team members. Charter terminated his employment the day he followed up on his report, citing his unprofessional communications as the basis for his termination. Seybold now believes the underpaid commissions were securities fraud, cooking the books, and shareholder fraud.

Seybold brought this suit against Charter for (1) violating the whistleblower protections of the Sarbanes-Oxley Act, and (2) breaching the employment contract (due to the unpaid commissions). Charter answered and then moved for judgment on the pleadings. And Seybold moved for a hearing.

## II. Legal Standards

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."³ In considering a Rule 12(c) motion for judgment on the pleadings, Courts use the same standard as for a Rule 12(b)(6) motion to dismiss for failure to state a claim.⁴ So, to survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"⁵ "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a

---

² Doc. No. 1 at 12.

³ FED. R. CIV. P. 12(c).

⁴ *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

⁵ *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[6]

### III. Analysis

Charter makes a variety of dispositive and repleading arguments for dismissal of Seybold's two claims. The Court takes each claim in turn.

#### A. *Sarbanes-Oxley Claim*

The Sarbanes-Oxley Act of 2002 forbids publicly traded companies like Charter from retaliating against an employee for

> any lawful act done by the employee . . . to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders

when the information or assistance is provided to a government agency or a supervisor.[7]

Charter claims Seybold didn't plead a Sarbanes-Oxley claim because: (1) "he admits he knew about and participated in the allegedly fraudulent conduct that forms the basis of his claim;" (2) he flunked three of the four elements for pleading a Sarbanes-Oxley claim; (3) complaints about Charter's internal practices are not actionable securities violations and Charter had no intent to defraud shareholders; (4) Seybold fails to allege that Charter knew he engaged in a protected activity; and

---

[6] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (cleaned up).

[7] 18 U.S.C. § 1514A(a).

4

(5) Seybold's alleged reports were too stale be a contributing factor to his termination. Seybold disagrees with all those arguments, primarily arguing that five of the six triggering events for the Sarbanes-Oxley retaliation provisions do not require shareholder fraud.

1.   Participant in the Fraud

First, Charter contends Seybold knew of and participated in the fraudulent conduct that is the basis of his claim. Seybold responds that the case Charter relies on is dicta in another circuit. The Court agrees with Seybold.

Charter relies on a Tenth Circuit case, *Verfuerth v. Orion Energy Systems, Inc.*, for the proposition that "Sarbanes-Oxley does not prohibit a company from firing an employee who confesses his own fraudulent conduct."[8] In *Verfuerth*, the former CEO brought a Sarbanes-Oxley whistleblower claim after he was fired after complaining that the board of directors should have informed shareholders of his grievances.[9] At summary judgment, the Tenth Circuit affirmed the dismissal of his claims for a variety of reasons and added that as CEO, he bore the burden of reporting to the Securities and Exchange Commission and could not justly contend that it was the directors' fault for not doing so.[10]

While the Fifth Circuit may well follow the Tenth Circuit on the right set of facts, this Court will not engraft a common-law unclean hands defense onto a federal

---

[8] 879 F.3d 789, 794 (7th Cir. 2018).

[9] *Id.* at 793–94.

[10] *Id.* at 794.

law without the Fifth Circuit saying so. And at most, this argument goes to one of Seybold's four reports (the funnel) and would not result in the dismissal of any claim. As such, the Court denies this portion of Charter's motion for judgment on the pleadings.

### 2. Batting .250 in His *Prima Facia* Case

Second, Charter argues Seybold's complaint flunks 3 of the 4 elements of his prima facia case. Seybold says his complaint is in good shape but offers to replead if necessary. It's necessary.

To prevail on a Sarbanes-Oxley whistleblower claim, "an employee must prove by a preponderance of the evidence that (1) []he engaged in protected activity; (2) the employer knew that []he engaged in the protected activity; (3) []he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action."[11] Charter doesn't contest at this juncture that Seybold's firing was an unfavorable personnel action, but it does contest the other three elements.

Regarding the first element, Charter makes three arguments.[12] The first is that Seybold never pled that any of the purportedly fraudulent information would have had a material impact on reported information. Charter claims that a violation involving "hundreds of thousands, if not millions" is immaterial, given that Charter

---

[11] *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 475–76 (5th Cir. 2008).

[12] Charter made an additional argument in its motion: that Seybold never pled Charter intended to deceive, manipulate, or defraud its shareholders. Seybold responded that he doesn't have to because five of the six Sarbanes-Oxley triggers aren't regarding shareholder fraud. That answer suffices for the Court, and apparently for Charter too because it dropped the argument in its reply.

6

has over $45 billion in annual revenue.[13]  Seybold responds that extrapolating his allegations company-wide could yield an impact in the "hundreds of millions."  The Court really isn't sure where Charter got the materiality argument.  Materiality isn't in the Sarbanes-Oxley whistleblower law.[14]  It isn't in the four of the six specifically defined trigger laws.[15]  It does appear halfway through footnote 9 in a Fifth Circuit case Charter cites, when the footnote quotes an unpublished administrative review board decision on securities fraud.[16]  The Court will not extrapolate that footnote to dismiss Seybold's claim (which rests on mail fraud, wire fraud, and shareholder fraud triggers as well).

Charter's second argument on the first element is that the allegedly fraudulent information is not reported to shareholders or third parties.  Seybold maintains his position that shareholder fraud is but one of six triggers, and things such as bank fraud need not be published to shareholders.  The Court agrees with Seybold.

And Charter's third argument on the first element is that Seybold only pleads that he currently thinks the conduct violate Sarbanes-Oxley, but that he must plead he thought there was a violation at the time he made his reports.  Seybold admits to

---

[13] Charter points to SEC filings, which it contends the Court can take judicial notice of without converting the Rule 12(c) motion into a summary judgment motion.  The Court need not cross that bridge here, given that Seybold failed to plead materiality.

[14] *See* 18 U.S.C. § 1514A.

[15] *See* 18 U.S.C. §§ 1341, 1343, 1344, 1348.

[16] *See Allen*, 514 F.3d at 480 n.9 (quoting *Platone v. FLYI, Inc.*, ARB Case No. 04–154, 2006 WL 3246910, at *11 (ARB Sept. 29, 2006)).

7

sloppy pleading and is happy to take another crack at the temporal state of mind issue. The Court will allow him to do so.

Charter's fourth argument on the first element is the notion that Seybold fails to identify the specific conduct he thought was illegal. Seybold's allegations such as that he "reported [a retagging] policy and asserted that it was improper"[17] lack specificity on what he actually reported and why he thought (at the time) it was illegal. But because Seybold is willing to replead, the Court will let him address this defect.[18]

The second element of a Sarbanes-Oxley prima facia case is that the employer knew of the protected activity (that Charter knew Seybold was making a whistleblower complaint for one of the six Sarbanes-Oxley triggers). Charter argues here that if Seybold has not alleged a belief in the illegality of the conduct at the time of the reporting, the Court cannot infer that Charter knew Seybold was a Sarbanes-Oxley whistleblower. Seybold contends he made his reports to his supervisors (and not law enforcement), so Charter knew what he told them. The Court is less concerned with what Charter knew about Seybold and more concerned with the above issues on what Seybold reported and whether he thought the conduct was illegal at

---

[17] Doc. No. 1 at 8.

[18] Charter makes much of Seybold being in sales, rather than accounting, and there being no objectively reasonable basis for one in sales to view an accounting practice as illegal. The Court is not prepared to say that categorically a salesperson could never be a Sarbanes-Oxley whistleblower when it comes to reporting. But because Seybold will replead, the Court will examine this argument after he has pled all his possible facts showing his view was objectively reasonable.

the time. When Seybold fixes his pleading defects as to the first element, that should cure any defects as to the second element.

The fourth element of Seybold's *prima facia* case is that the protected activity was a contributing factor in the unfavorable action. Charter contends Seybold's first three of Seybold's reports lacked temporal proximity to his firing. Seybold counters that Charter revived them by firing him for his unprofessional communication, which included the reports. The Court mostly agrees with Seybold. For example, Seybold pleads that his complaints regarding the funnel "are emails that subsequently were cited by Charter as part of the basis for terminating Seybold."[19] But Seybold lacks the specificity with the other two older reports that he has with the funnel report. As such, his repleading should address whether his other two older reports were ones Charter relied on when terminating him.

## B. Breach of Contract

In addition to his Sarbanes-Oxley claim, Seybold also filed a breach of contract claim for unpaid commissions. Charter seeks to dismiss the contract claim, arguing: (1) the complaint fails to plead offer and acceptance; (2) a discretionary incentive commission plan isn't a Texas contract; and (3) Charter could have modified the commission plan at any time, so it couldn't have been breached. Seybold responds that he was an at-will employee who could accrue commissions as he earned them under the plan. The Court agrees with Charter on the second issue.

---

[19] Doc. No. 1 at 12.

The Court can consider documents that were not attached to a complaint if the documents were central to and referenced in the complaint.[20]  That is the situation here.  Additionally, Seybold admits that the attached 2019 commission plan was "undisputed."[21]

Under the plan, "nothing in this Plan shall constitute a contract of employment or contract of any other kind."[22]  Texas courts[23] and federal courts[24] have held such clauses to be valid disclaimers that prevent commission plans from forming the basis of a contract claim.

Seybold responds with two cases.  The first is *Jourdan v. Schenker International, Inc.*, where the Fifth Circuit looked at a commission plan that had two possible meanings.[25]  One possible meaning was that the right to a commission

---

[20] *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (holding documents a defendant attaches to a motion to dismiss are considered part of the pleadings if the complaint refers to them and they are central to the claim).

[21] Doc. No. 21 at 30 ("[T]he real issue before this Court is not the contract's existence, but to what extent the terms of the attached parties' undisputed 2019 Commission Plan is enforceable for past work done by Seybold[.]").

[22] Doc. No. 12-2 at 4.

[23] *See Stinger v. Stewart & Stevenson Servs., Inc.*, 830 S.W.2d 715, 719 (Tex. App.—Hous. [14th Dist.] 1992, writ denied) ("This arrangement is an incentive arrangement and is not an employment contract.  It is the intent of this arrangement that the results will be for the mutual benefit of both the Company and the employee as long as the employee is employed by the Company[.]").

[24] *See Oldham v. ORIX Fin. Servs., Inc.*, No. 3:05-cv-2361-M, 2007 WL 530202, at *3 (N.D. Tex. Feb. 21, 2007) (Lynn, J.) ("These provisions of the Plan leave no doubt that OFS intended merely to set forth an incentive arrangement, not a binding contract."); *Kougl v. Xspedius Mgmt. Co. of Dall./Fort Worth*, No. 3:04-cv-2518-D, 2005 WL 1421446, at *2 (N.D. Tex. June 1, 2005) (Fitzwater, J.) ("Because the Plan contains specific provisions that disclaim its use as a contract and make all terms modifiable at the discretion of Xspedius Communications, LLC, it did not create a valid contract.").

[25] 71 F. App'x 308, 312 (5th Cir. 2003).

accrued when the commission was calculated or paid.[26]  The other meaning was the right accrued once the account showed a profit (it was underwater previously).[27]  That ambiguity created a fact issue that sent the case past summary judgment.[28]  But *Jourdan* only involved the issue of at will employment on the commission plan; it did not involve a commission plan that expressly disclaimed it was a contract as the plan does here.[29]

Seybold's other case is *Paniagua v. City of Galveston, Texas*, where the Fifth Circuit held that the fact that "an employment contract is terminable at-will . . . does not mean that an employer can promise to pay an employee a certain wage and then unilaterally decide to pay the employee less for work she has already done."[30]  But Seybold fails to note that *Paniagua* looked for a disclaimer ("that they do not create a contract or affect legal relations") and found none.[31]  That disclaimer is present here.  As a result, Seybold's contract claim must fail because the commission-agreement language he relies on disclaimed it was a contract.

---

[26] *Id*.

[27] *Id*.

[28] *Id*. at 313.

[29] *Id*. at 312.  The commission plan here also left sole discretion to Charter to change its terms and specified Seybold was an at-will employee.  Doc. No. 12-2 at 3–4 ("Charter reserves the right to rescind, revise, adjust or modify the Plan, commission amounts or any part of th[e] Plan, at any time and as business needs require. . . . I also understand and acknowledge that . . . I will remain at all times employed at the will of Charter.").  The Court does not rely on these provisions, as they run into issues the Fifth Circuit dealt with in *Jourdan* and *Paniagua* regarding illusory contracts and at-will employees.

[30] 995 F.2d 1310, 1313 (5th Cir. 1993) (cleaned up).

[31] *Id*. at 1314.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Charter's motion for judgment on the pleadings. The Court grants the motion with respect to Seybold's contract claim and denies it with respect to Seybold's Sarbanes-Oxley claim. The Court **DISMISSES AS MOOT** Seybold's motion for oral argument. Seybold has 28 days to file an amended complaint that is limited to changes that cure the defects this order identifies.

**IT IS SO ORDERED** this 7th day of March, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE