UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DARRELL SEYBOLD, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | Civil Action No. 3:21-CV-0228-X |
| CHARTER COMMUNICATIONS, § | |
| INC., § | |
| § | |
| *Defendant*. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant Charter Communications, Inc.'s ("Charter") motion to dismiss plaintiff Darrell Seybold's amended complaint, [Doc. No. 29], Charter's motion to stay discovery pending the Court's decision on its motion to dismiss [Doc. No. 30], and Seybold's motion for leave to file a second amended complaint [Doc. No. 33]. After careful consideration, and for the reasons below, the Court **GRANTS** the motion to dismiss, **DENIES** Seybold's motion for leave to file a second amended complaint, and **DISMISSES WITH PREJUDICE** Seybold's complaint. The Court **DISMISSES AS MOOT** Charter's motion to stay discovery.

I. Background

Seybold's employment with Charter began after Charter's 2016 merger with Seybold's previous employer. It ended in February 2020, with Charter citing Seybold's unprofessional conduct and communication as its basis for firing him. But Seybold maintains that Charter actually fired him because of four reports he filed that exposed Charter's unlawful or unethical corporate behavior. Seybold sued

1

Charter for (1) violating the whistleblower protections of the Sarbanes-Oxley Act and (2) breaching his employment contract due to unpaid commissions.

Charter moved for judgment on the pleadings on both issues. The Court held that Seybold failed to allege a Sarbanes-Oxley violation with sufficient factual specificity as to the first, second, and fourth elements of his prima facie case, and allowed Seybold to replead to cure the defects in his complaint.[1] It granted judgment on the pleadings for Charter on Seybold's breach-of-contract claim.

Seybold filed an amended complaint alleging a Sarbanes-Oxley violation and Charter now moves to dismiss it, arguing that Seybold failed to cure the defects the Court identified in its prior opinion. In his response, Seybold asks the Court for leave to further amend his complaint. Finally, Charter moves to stay discovery pending resolution of its motion to dismiss.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[2] To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1] Doc. No. 24 at 7–9.

[2] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

defendant is liable for the misconduct alleged."[4]  Although the plausibility standard does not require probability, "it asks for more than a sheer possibility that a defendant has acted unlawfully."[5]  In other words, the standard requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."[6]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[7]  "Speculation . . . is not the applicable pleading standard."[8]  Rather, courts "examine the factual allegations to ensure that they are 'enough to raise a right to relief above the speculative level.'"[9]

### III. Analysis

The Sarbanes-Oxley Act of 2002 prohibits publicly traded companies like Charter from retaliating against employees for

> any lawful act done by the employee . . . to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders

when the employee provides the information to a government agency or a supervisor.[10]  Prevailing on a Sarbanes-Oxley whistleblower claim requires an

---

[4] *Id.*

[5] *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[6] *Iqbal*, 556 U.S. at 678.

[7] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[8] *Blank v. Eavenson*, 530 F. App'x 364, 370 (5th Cir. 2013).

[9] *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[10] 18 U.S.C. § 1514A(a).

employee to "prove by a preponderance of the evidence that (1) []he engaged in protected activity; (2) the employer knew that []he engaged in the protected activity; (3) []he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action."[11]

Charter has never contested the third element, but its motion for judgment on the pleadings challenged the other three. Seybold claimed that his four reports satisfied these elements. The Court wasn't convinced for a few reasons. As to the first element—that Seybold's reports were protected activity—Seybold failed to plead that "he thought there was a [Sarbanes-Oxley] violation *at the time he made his reports*," giving rise to a "temporal state of mind issue."[12] Seybold also failed to meet the first element because he "fail[ed] to identify the specific conduct he thought was illegal."[13] For these same reasons, the Court found the second element unmet, noting that "[w]hen Seybold fixes his pleading defects as to the first element, that should cure any defects as to the second element."[14] Finally, as to the fourth element, the Court instructed Seybold to replead and "address whether his [] two older reports were ones Charter relied on when terminating him."[15]

As with his original complaint, the Court now turns to each of Seybold's reports to determine whether the amended complaint cured the factual inadequacies the

---

[11] *Allen v. Admin. Review Bd.*, 514 F.3d 468, 475–76 (5th Cir. 2008) (cleaned up).

[12] Doc. No. 24 at 7–8 (emphasis added).

[13] *Id.* at 8.

[14] *Id.*

[15] *Id.* at 9.

Court previously identified.

## A. Seybold's First Report

Seybold's first report concerned a 2016 "corporate policy and practice" in which Charter began "retagging" customer circuits to claim new revenue by making old customer accounts appear to be new.[16] Seybold's original complaint suffered three defects as to the first report, which the Court granted leave to replead: it (1) "lack[ed] specificity on what he actually reported," (2) failed to describe "why he thought (at the time)" that Charter's retagging policy "was illegal,"[17] and (3) failed to sufficiently plead a causal link between the first report and Seybold's termination.[18]

The Court turns first to specificity. In his original complaint, Seybold described his first report simply by stating that he "reported and opposed this policy through verbal communication and emails to his Director Robert Hadaway and Lynne Bell."[19] His amended complaint describes the content of his first report as follows: "Seybold reported this Retagging Misreporting to persons with supervisory authority over him through verbal communication and emails to his Director Robert Hadaway and Lynne Bell, Regional Vice-President of Enterprise Sales. In these emails, Seybold reported this policy and asserted that it was improper."[20]

The amended complaint provides zero new, meaningful detail. Seybold adds

---

[16] Doc. No. 25 at 14–15.

[17] Doc. No. 24 at 8.

[18] *Id.* at 9.

[19] Doc. No. 1 at 8.

[20] Doc. No. 25 at 16.

that the first report's recipients were "persons with supervisory authority over him," but that was apparent from his first complaint because he described Hadaway as "his Director." As to the first report's contents, Seybold's amended complaint merely offers wordier synonyms to his original complaint's "reported and opposed," expounding that he "reported this policy and asserted that it was improper." Seybold failed to address the Court's concerns by providing specificity as to the first report's contents. Without addressing why Seybold believed Charter's retagging policy was illegal or whether his first report caused his termination, the Court concludes that Seybold failed to cure the defect in his original complaint as to his first report because he failed to specifically describe the report's contents. The amended complaint, therefore, cannot establish that his first report concerned a Sarbanes-Oxley violation, so it cannot satisfy the first element of his claim against Charter.

### B. Seybold's Second Report

Seybold's second report concerned a 2018 practice wherein Charter reclassified thousands of senior residential homes from commercial accounts to residential accounts.[21] The second report suffered from the same three defects as the first report: inadequate specificity regarding the report's contents, Seybold's state of mind, and the causal link between the second report and Seybold's termination.

The Court begins again with the report's contents. Seybold's original complaint describes the second report's contents merely by stating that "Seybold reported and opposed the conduct through numerous emails that went up and down

---

[21] *Id.* at 16–17.

6

the chain of command."[22] His amended complaint includes this identical language and adds that "Seybold began reporting and opposing this conduct in 2018 to persons with supervisory authority over him. The[] reports and opposition took the form of emails and direct conversations [with] his supervisors Lynne Bell (Regional Vice-President of Enterprise Sales) and Richard Twilley (Group Vice President of Enterprise Sales)."[23]

Once again, Seybold simply added words without adding meaning. What did these emails say, what were the topics of these conversations, and what combination of verbal and electronic communication actually constituted Seybold's second report? Federal pleading standards do not permit the Court to guess. Seybold did not follow the Court's instruction to supply more specific facts. Regardless of Seybold's subjective state of mind or whether the second report caused his termination, the Court finds that Seybold's second report cannot support a Sarbanes-Oxley claim because he failed to describe it with the requisite specificity.

### C. Seybold's Third Report

Seybold's third report concerned deliberate misreporting of projected sales, which he alleged Charter achieved by changing its standard "sales funnel" to manipulate its perceived success in the eyes of its shareholders.[24] Unlike with his first two reports, Seybold clearly alleged a causal link between his third report and his termination, leaving only defects in specificity and state of mind for

---

[22] Doc. No. 1 at 10.

[23] Doc. No. 25 at 18.

[24] *Id.* at 20.

reexamination in his amended complaint.

Again, lack of specificity strikes the mortal blow. In his original complaint, Seybold alleged he "reported and opposed such changes as long as possible," which "included communications with human resources professionals."[25] His amended complaint adds nothing of substance: "Seybold reported and opposed such changes as long as possible. Such reporting and opposition occurred in 2019, and it included communications with Seybold's direct supervisors Marc Newhaus (Sales Director), Lyn[n]e Bell (Regional Vice-President of Enterprise Sales) and Richard Twilley (Group Vice-President of Enterprise Sales) and with human resources professionals."[26] New words, same meaning. Details about the specific higher-ups Seybold complained to cannot overcome a lack of detail about what his complaints actually said. Seybold failed to follow the Court's instructions and did not add the specificity required to survive at the motion to dismiss stage. Regardless of whether his amended complaint satisfies the state-of-mind requirement, its failure to specify what the third report actually said renders it unable to satisfy the first element of Seybold's Sarbanes-Oxley claim.

### D. Seybold's Fourth Report

This leaves only Seybold's fourth report, which identified a flaw in Charter's method of calculating commissions that led to underpayment for Seybold and his team members. Seybold alleged the requisite causal link between this report and his

---

[25] Doc. No. 1 at 11.

[26] Doc. No. 25 at 22.

termination. He also included specific emails between himself and Charter that convey the substance of the conversation. But the amended complaint's account of the fourth report still suffers a flaw that renders it unable to satisfy the second element of Seybold's Sarbanes-Oxley claim: it fails to allege that the fourth report made Charter aware that Seybold was alleging a Sarbanes-Oxley violation.

Seybold alleges that *he* "reasonably believed that this conduct was not a mere accident, but that it was [] intentional conduct designed to benefit Charter" and that "Charter was committing mail fraud, wire fraud, and violating SEC rules and regulations."[27] Seybold's claim requires him to allege that he believed Charter was violating Sarbanes-Oxley, but it requires more than that. To bring a valid claim, Seybold must further allege that his fourth report put *Charter* on notice that Seybold was alleging a Sarbanes-Oxley violation.[28]

Seybold's description of his fourth report gives no indication that it made Charter aware that Seybold was alleging mail fraud, wire fraud, or violations of SEC rules. Seybold says he "brought the Compensation Underpayment to the attention of his Charter Communications chain of command" in an email requesting that his superiors "take this email as a formal dispute on behalf of myself, my team[,] and my director to have the [] commission . . . recalculated and applied correctly."[29] He stated that "there has been a misapplication of the 2019 comp[ensation] plan," adding that

---

[27] *Id.* at 24.

[28] *Allen*, 514 F.3d at 475–76.

[29] Doc. No. 25 at 25–26.

9

certain "comp[ensation] plans have [] been applied erroneously."[30] And he sent an email "follow[ing] up on the [] commission dispute," concluding: "Please let me know a timeline for completion, as timeline to correct will determine course of action."[31]

Seybold's amended complaint alleges that "Charter knew, or should have known or suspected[,] that Seybold's [fourth report was] identifying mail fraud, wire fraud, and violations of SEC rules and regulations."[32] But how? Seybold asked Charter to "recalculate[]" the commission due to a "misapplication" of the compensation plan, which had "been applied erroneously." Perhaps this request implies wrongdoing by Charter through oblique innuendo or a passive-aggressive tone, but it is hardly a concrete allegation of a Sarbanes-Oxley violation. It is not even a concrete allegation of any wrongdoing at all. The language Seybold chose could reasonably have led Charter to believe that Seybold's fourth report was merely trying to alert Charter to an inadvertent mistake rather than allege intentional, illegal acts.

Seybold characterized his email as initiating a "formal dispute" and vaguely threatened a future "course of action," but that, too, left his position ambiguous. The fourth report could perhaps have meant Seybold was planning to allege Sarbanes-Oxley violations against Charter at a future time, but it just as easily could have indicated Seybold was planning to quit working for Charter, appeal to other higher-ups, or publish his findings to other employees or the media. Even if Charter could have plausibly interpreted the fourth report as alleging Sarbanes-Oxley violations,

---

[30] *Id.* at 26.

[31] *Id.* at 27.

[32] *Id.*

that is not the only—or even the most likely—interpretation. The fourth report fails to show that Charter knew what Seybold intended to allege, so it cannot satisfy the second element of Seybold's claim.

### IV. Conclusion

Seybold's amended complaint added a host of details surrounding what Charter did wrong, but it failed to sufficiently allege what Seybold actually reported. His account of the first three reports fails to allege what those reports actually said. And his account of the fourth report fails to show that the report alleged a Sarbanes-Oxley violation against Charter. In short, Seybold's amended complaint failed to state a claim upon which relief may be granted.

The Court's previous order detailed exactly why Seybold's original complaint was deficient and instructed Seybold on how his amended complaint could address the deficiencies. Because Seybold failed to follow those instructions and submitted his amended complaint with the same errors, the Court will not grant him another chance to replead.

The Court **GRANTS** Charter's motion to dismiss Seybold's amended complaint, **DENIES** Seybold's motion for leave to file a second amended complaint, and **DISMISSES WITH PREJUDICE** Seybold's amended complaint. The Court **DISMISSES AS MOOT** Charter's motion to stay discovery.

11

**IT IS SO ORDERED** this 3rd day of January, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE